UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
SEOUL ORTIZ,


                         Plaintiff,                    **MEMORANDUM and ORDER**

          -against-                                    09-CV-1280 (SLT)(LB)

NEW YORK CITY HOUSING AUTHORITY,
KENNY KAYE, FERNANDO RAMIREZ,
MRS. WINGATE, MRS. PETERS,
ROBERT MCCANTEE, CARLA WARREN,
DIRECTOR DAWN PINNOCK

                         Defendants.
----------------------------------------------------------------x
**TOWNES, United States District Judge:**


          Plaintiff, Seoul Ortiz, a former employee of defendant New York City Housing Authority

("NYCHA"), brings this *pro se* action pursuant to 42 U.S.C. §§ 1981 and 1983, Title VII of the

Civil Rights Act of 1964,[1] New York Executive Law § 296(6), and New York City

Administrative Code §8-107, alleging that defendants discriminated against him based on his

race.  Defendants now move for summary judgment pursuant to Fed. R. Civ. P. 56.  For the

reasons set forth below, defendants' motion is granted.

---

[1] Plaintiff's Amended Complaint cites "Title VI of the Civil Rights Act of 1964."  Because plaintiff cites to the New York State and City laws prohibiting employment discrimination, this Court assumes that plaintiff meant to cite to the Title VII, 42 U.S.C. §v 2000e *et seq*.,which prohibits employment discrimination, rather than Title VI, 42 U.S.C. §§ 2000d, *et seq*., which prohibits discrimination in programs and activities receiving federal assistance.

**BACKGROUND**

I. Plaintiff's Time at NYCHA

Plaintiff was employed by defendant NYCHA from February 8, 1999 until his resignation on March 6, 2009. The parties dispute plaintiff's precise title. Although plaintiff alleges that he was "employed . . . in the title of caretaker P," and that his duties were "to assist the Plaster[er]," Amended Complaint ("Complaint") at ¶ 1, defendants have adduced evidence that he was hired as a "Caretaker," and that "Caretaker P" is not a job title recognized by NYCHA. See Declaration of Anthony Marotta ("Marotta Declaration") at ¶ 3.

It is undisputed that at some point in the Spring of 2008, plaintiff's supervisor, defendant Kenneth Case (incorrectly named in this action as Kenny Kaye) transferred him to Ravenswood Houses to perform janitorial duties. Plaintiff was unhappy about the reassignment. According to plaintiff, he complained to defendant Carla Warren, who supervised Caretakers, that he was a Caretaker P and, therefore, "skilled labor." Complaint at ¶ 6. She replied that he was to do what she said, or he would face discipline. Thereafter, plaintiff continued to verbally complain to defendant Superintendent Fernando Ramirez on a daily basis, again asserting that he, as a Caretaker P, was skilled labor and should not be assigned janitorial duties. Eventually, Ramirez, too, threatened to discipline plaintiff if he continued complaining and "making trouble." Complaint at ¶ 7. In May of 2008, plaintiff made a complaint to the Inspector General's office. Complaint at ¶ 8.

In August 2008, plaintiff was issued a "counseling memorandum" by defendant McEntee, an Assistant Superintendent (incorrectly named in this action as Robert McCantee). In that memorandum, a copy of which is attached to the complaint, McEntee stated that on July 31,

2008, he and Ramirez had discovered that plaintiff had failed to complete most of the janitorial duties that he was assigned to do that morning. McEntee further stated that, when confronted, plaintiff falsely claimed that he lacked "the proper equipment." Counseling Memo dated Aug. 11, 2008. When presented with the counseling memorandum, plaintiff not only declined to sign it, but said something dismissive. The parties disagree as to precisely what plaintiff said. A second counseling memo, also attached to the Complaint, states that plaintiff told McEntee, "[g]ive me 3 copies so I can wipe my ass with them." Veytsman Decl. Ex. L. However, at his deposition, plaintiff stated that he told McEntee he intended to use the copies "to blow [his] nose." Plaintiff's Deposition 65: 22-25. McEntee promptly issued plaintiff a second counseling memo, which plaintiff also refused to sign.

On September 9, 2008, plaintiff was suspended from his position for thirty days. Complaint at ¶ 10; Answer at ¶ 14. Upon his return to work in October 2008, plaintiff continued to complain about being forced to perform janitorial work. He told defendant Peters, an office manager, that Caretaker J duties were "out of title work." Complaint at ¶ 11. Peters apparently refused to reassign him, telling him, "I put you where I need you." *Id*. During the five months from October 2008 to March 2009, plaintiff was assigned to Ocean Bay Houses where the Superintendent, defendant Wingate, continued to assign him to janitorial duties. Plaintiff maintains that he was assigned to janitorial duties while other "similarly situated," "Caucasian" NYCHA employees were not. Complaint at ¶ 16.

On February 5, 2009, Plaintiff submitted a form requesting a medical leave of absence. Complaint at ¶ 14. Plaintiff claims that defendant Wingate denied his request and subsequently docked his pay. *Id*. On March 6, 2009, three days before plaintiff was scheduled to have a disciplinary hearing, he resigned from his position. Complaint at ¶ 17; Veytsman Decl. Ex. R at

2.

II. Procedural History

Less than three weeks later, on March 24, 2009, plaintiff commenced this action by filing

a complaint pursuant to 42 U.S.C. § 1983[2] and New York Administrative Code § 8-107 against

Union Local 237, NYCHA and four NYCHA employees: defendants Kenneth Case, Fernando

Ramirez, Sherraine Wingate, and Elaine Peters. Plaintiff's original complaint alleged, *inter alia,*

that "[d]ue to the retaliation and adverse work environment Plaintiff received" from the

defendants, plaintiff was "constructive[ly] discharge[d]" from his employment. Initial

Complaint at ¶ 13. Plaintiff sought immediate reinstatement and compensatory and punitive

damages in the amount of one million dollars from each defendant.

On June 22, 2009, plaintiff filed an Amended Complaint naming three additional

NYCHA employees as defendants: Robert McEntee, Carla Warren, and Dawn M. Pinnock.

Plaintiff's Amended Complaint alleges that defendants violated Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e-2(a), in various respects. Plaintiff alleges that defendants engaged in

employment discrimination and retaliation; that they intentionally failed to promote him; and

that they subjected him to a hostile work environment and constructively discharged him.

Plaintiff also claims that defendants violated 42 U.S.C. §1983 ("section 1983") when they

denied his constitutional right to equal protection and procedural due process.

On July 28, 2009, this Court issued a Memorandum and Order dismissing, *sua sponte*,

any Title VII claims brought against individual defendants. Defendants now move for summary

---

[2] Plaintiff also states a 1981 claim, but does not make any factual allegations that can be construed as a claim under §1981.

judgment on the grounds that, *inter alia*, plaintiff fails to establish a *prima facie* case of employment discrimination or retaliation; that plaintiff makes no allegations that rise to the level of discriminatory failure to promote; that plaintiff's claim that he was subjected to a hostile work environment and constructively discharged fail as a matter of law; and that defendants are entitled to summary judgment on plaintiff's section 1983 claims. Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Memorandum") at 15-25. When plaintiff failed to respond to defendants' motion, this court issued an order, dated November 1, 2010, advising plaintiff that defendants' motion for summary judgment was likely to be granted unless plaintiff provided the Court with evidence to contradict the evidence contained in defendants' motion papers. Despite this warning, plaintiff has failed to provide opposition papers.

## DISCUSSION

I. Summary Judgment Standard

Summary judgment should be granted "where the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." *Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.*, 302 F.3d 83, 90 (2d Cir. 2002) (citing Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the party moving for summary judgment demonstrates that there are no genuine issues of material fact, "the nonmoving party, must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor." *Burt Rigid Box*, 302 F.3d at 91 (citing *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995)). The

nonmoving party cannot simply rest upon "conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Id*.

When deciding a summary judgment motion, a trial judge is not required to make factual findings. *Anderson*, 477 U.S. at 250. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. Additionally, courts should construe the submissions of a *pro se* litigant "liberally" and should interpret them to "raise the strongest arguments that they suggest." *Treistman v. Federal Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006).

## II. Title VII Claims

Most of defendants' arguments for summary judgment relate to plaintiff's Title VII employment discrimination and retaliation claims. Plaintiff's employment discrimination claims are based on section 703(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-2 (a), which provides in relevant part:

> It shall be an unlawful employment practice for an employer –
>
> (1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race. . . ; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race . . . .

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court outlined the three-step burden for analyzing employment discrimination cases. The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Id.* at 802. After plaintiff's *prima facie* case is established, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's [treatment]." *Id.* Finally, the burden of proof shifts back to the plaintiff, who then has the burden to show that the reason for the challenged action offered by the employer is "in fact pretext." *Id.* at 804. The plaintiff's opportunity to rebut the employer's evidence "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

1. Discrimination Claims

*Prima Facie Case*

Turning to the first step of this analysis, defendants assert that plaintiff has failed to make out a *prima facie* case of Title VII employment discrimination. A plaintiff's burden of establishing a *prima facie* case of employment discrimination is "*de minimis.*" *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). A plaintiff has to show by a preponderance of the evidence that: (i) he is a member of a protected class; (ii) is qualified for the position; (iii) he suffered an adverse employment action; and (iv) the circumstances surrounding that action give rise to an inference of discrimination. *Collins v. N.Y. City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002); *see also Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). Defendants argue that plaintiff's *prima facie* case fails on the third prong since the employment actions he alleges do not rise to the level of adverse employment actions.

A plaintiff suffers an adverse employment action if there exists a "'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Richardson v. N.Y. State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)). In order to qualify as "materially adverse," the challenged employment action must be a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* Examples of adverse employment action include termination of employment, a decrease in wage or salary, a less distinguished title, a material loss of benefits, and substantially diminished material responsibilities. *Id.* The ultimate determination of whether an employment action is adverse must be decided on a case-by-case basis since "there are no bright-line rules [and] courts must pore over each case to determine whether the challenged employment action reaches the level of 'adverse.'" *Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir. 1997).

Defendants argue that plaintiff was not subjected to any adverse employment action because he was merely transferred, not demoted. Specifically, defendants contend that:

> There is no dispute that Plaintiff's salary, benefits, or civil service title were unchanged upon his reassignment to Ravenswood. Nor can there reasonably be any dispute that the job duties plaintiff performed at Ravenswood fall within his civil service title of 'Caretaker (Housing).' In short, to the extent that Plaintiff's reassignment may be deemed to be a transfer, it is a lateral transfer and not a demotion.

Memorandum at 15. However, defendants' characterization of plaintiff's claim fails to capture the essence of plaintiff's complaint: that plaintiff, because of his race, was reassigned to comparatively menial "janitorial" work, while Caucasian caretakers were not. Courts in this Circuit have held that giving an employee relatively undesirable work assignments can be considered adverse employment action. *Wright v. N.Y. City Off-Track Betting Corp.*, No. 05

Civ. 9790 (WHP), 2008 WL 762196, at *4 (S.D.N.Y. Mar. 24, 2008) (plaintiff's relegation to "menial tasks" while co-workers performed "substantive assignments" may constitute an adverse employment action); *see also  Lessambo v. PricewaterhouseCoopers, L.P.*, No. 08 Civ. 6272 (WHP), 2010 WL 3958787, at *9 (S.D.N.Y. Sept. 27, 2010) (citing *Joseph v. Leavitt*, 465 F.3d 138, 152 (2d Cir. 2004) for the proposition that a significant reduction in workload could be an adverse employment action).

In addition, defendants' argument ignores plaintiff's claims that he was denied training because of his race.[3]  Plaintiff alleges:

> From March of 2008 to March of 2009 Plaintiff has requested several times to Municipal defendant for training…to become a plaster[er]. Plaintiff [sic] request for advance opportunities was denied based on race, because currently the plaster[er] title is held by predominately male Caucasians.

Complaint at ¶ 15.  The "[f]ailure to train is considered an adverse employment action when it materially affects a plaintiff's 'opportunities for professional growth and career advancement or directly on a plaintiff's compensation.'"  *Turley v. ISG Lackawanna, Inc*., No. 06 Civ. 794S, 2011 WL 1104270 at *12 (W.D.N.Y. Mar. 23, 2011) (quoting *Nakis v. Potter*, No. 1 Civ. 10047, 2004 WL 2903718 (HBP) at *20 (S.D.N.Y. Dec. 15, 2004); *see also Hill v. Rayboy-Brauestein*, 467 F.Supp.2d 336, 352 (S.D.N.Y. 2006).  Defendants do not deny that plaintiff made requests for training that were rejected, but they offer evidence that these requests were untimely. Accordingly, there may be sufficient evidence of a failure to train to make out adverse employment action on this basis.

*Defendants' Non-Discriminatory Reasons and Plaintiff's Rebuttal Burden*

---

[3] In their Memorandum, defendants argue that allegations regarding a denial of training, *inter alia*, are time-barred. However, because the Court is granting summary judgment as to all federal claims, the Court does not consider these arguments.

Since this Court finds that there is sufficient evidence to establish the adverse employment action necessary to state a *prima facie* case of employment discrimination, we proceed to the second step of the *McDonnell Douglas* analysis and determine whether defendants have articulated legitimate, nondiscriminatory reasons for the employment action. *See McDonnell Douglas*, 411 U.S. at 802. Defendants have provided ample evidence of non-discriminatory reasons for plaintiff's reassignment to janitorial duties. According to defendants, plaintiff was initially assigned to assist another NYCHA employee, a Sprayer, who was subsequently assigned to a different job and no longer required the assistance of a Caretaker. Marotta Declaration at ¶¶ 8, 9. Based on NYCHA's previously established system of reassigning the least senior, unoccupied Caretaker to whatever post needs manning, plaintiff was reassigned to janitorial duties. *Id.* at ¶¶ 6-9. Defendants also provide evidence that, according to plaintiff himself, the only time the plaintiff requested training to become a Plasterer, such training was not offered at NYCHA. Plaintiff's Deposition 194:5-17, 195:5-10.

Plaintiff must show that the non-discriminatory reasons for the challenged action offered by the employer are pretextual. However, plaintiff, who never responded to the defendants' motion despite this Court's warning, has provided no rebuttal to defendants' proof of non-discriminatory reasons for reassigning plaintiff to janitorial duties and explanation for denying him training opportunities. Accordingly, plaintiff has failed to meet his burden of persuasion, *(see Burdine*, 450 U.S. at 256), and summary judgment must be granted to defendants on his Title VII discrimination claims.

2. Employment Retaliation Claim

The Court construes the complaint to state a claim of Title VII employment retaliation. Section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) states:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

In order to establish a *prima facie* case of employment retaliation plaintiff must show that (1) he participated in an activity protected by Title VII, (2) the employer had knowledge of the protected activity, (3) the employer took a materially adverse employment action against the plaintiff, and (4) a causal connection between the protected activity and the adverse employment action exists. *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010); *see also Deshpande v. Medisys Health Network, Inc.*, No. 07-CV-375 (KAM), 2010 WL 1539745 at *9 (E.D.N.Y. April 16, 2010) (citing *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006)). If a plaintiff meets this initial burden, "a presumption of retaliation arises, and the burden of production shifts to the defendant to articulate a legitimate, non-retaliatory reason for its action." *Deshpande*, 2010 WL 1539745 at *9 (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010); *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004)).

The Court must first consider whether the plaintiff participated in protected activity. There are three potential instances of protected activity referenced in the complaint and deposition testimony. First, in the Complaint, the plaintiff declares that he filed a written complaint with the Inspector General office in May of 2008. Complaint at ¶ 8. Second, in his deposition testimony, the plaintiff discusses serving as a witness in support of a complaint that a co-worker made regarding Fernando Ramirez. Plaintiff's Deposition 13:11-14:2. Finally, the plaintiff claims, in his deposition, that the defendants retaliated against him for filing the instant suit. Plaintiff's Deposition 168:3-15.

The plaintiff did not provide details about the content of the May 2008 complaint. The Court cannot determine whether the complaint related to unlawful employment practices, and is, therefore, a protected activity. The defendants contend that this is actually a reference to the second potential instance of protected activity: plaintiff's participation in the complaint made by his co-worker, Alfredo ("Freddy") Trouche. The deposition testimony supports this argument and the plaintiff does not rebut it. In his deposition, the plaintiff describes the behavior underlying the co-worker's complaint, and how he experienced retaliatory treatment as a result:

A. I was double-crossed by [Fernando Ramirez]. I never argued with the man. We never bumped heads together. Just because I see him doing certain things to certain people. Freddie [sic] Troche comes up to me, "You saw what he did?" I say "Yes." "Do you want to be a witness, because I'm going to go to the hygiene, make a complaint?" And I say "Yeah," so I gave my testimony to the hygiene. Before I knew the man came after me with – with a bulldozer.

Q. Back up. What is it that you saw Mr. Ramirez do?

A. …[H]e tells us he's going to go out and...check the buildings, all the buildings he said. My part, where I was working at, I was doing – in other words, clean up the outside, policing the area, and he…comes out with another superintendent, another assistant super…and he goes area one, area eight and area 12….And this is going on mostly everyday [sic], so if the man was having a building check, he only go check the three buildings instead of going from area 10, 11, 12, 13, 14, 15, 16….So he's harassing those people, whatever, and I see what he was doing so I testified. Before I knew I'm in hot water.

Q. What did you testify?

A. I went to the hygiene with Freddie [sic] Troche, what he was doing to them, harassing, everything.

…

A. …Number one, when I was there in Ravenswood for about six, seven months I had my own shop. I was attached to painter's section, sprayer, and I had the key for the shop. Nobody never went in there. I left my money, my wallet, my gold, nobody went in there for those time period I was there. When I make the complaint, he came after me, he changed my cylinder.

…

> …I came up here because I was his witness [regarding what] Fernando Ramirez was doing towards him, writing him up, whatever reason of the building, but I only gave my testimony [as to] what I saw what he was doing….

Q. What is it that you saw him do?

A. Coming around harassing him.

Q. How was he harassing him?

A. If the man goes out and give us a speech he's going to check buildings and he only goes to three buildings and it's not the first, the second the third, the fourth and the fifth, this is every time. He never go out and check all the buildings. He only check three buildings.

Q. So you're saying he harassed Mr. Troche by checking his buildings?

A. Right. I mean, the man has the right, but you don't come and tell us you're going to go and check all the buildings and you only go to three buildings. Those are the people who you're trying to get rid of.

Plaintiff's Deposition 13:17-17:2. It is within the discussion of testifying for his co-worker that the plaintiff refers to "mak[ing] [his] complaint." *Id*. at 15:19-20. The evidence indicates that testifying about Ramirez's behavior was the substance of the plaintiff's "complaint."

Testifying is a protected activity for the purposes of a retaliation claim when the testimony is related to an unlawful employment practice under Title VII. *See* 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"). However, the plaintiff has not presented evidence indicating that Troche's complaint involved discriminatory behavior against a protected class. The plaintiff merely states that Ramirez was somehow

harassing Troche – "trying to get rid of [him]" (Plaintiff's Deposition 17:2) – but there are no facts indicating that it was because of his race, color, religion, sex or national origin.

Filing a lawsuit for discrimination under Title VII, however, falls squarely within the category of protected activity. Further, the plaintiff's employer was aware of the protected activity because the lawsuit was filed directly against them. However, the plaintiff fails to establish that the defendants took a materially adverse employment action against him. In his deposition transcript, the plaintiff claims that the defendants retaliated by having the plaintiff's unemployment benefits revoked:

Q. Are you alleging that NYCHA opposed your unemployment benefits?

A. You stopped it.

Q. We stopped it?

A. You stopped it.

Q. What's your basis for the belief that NYCHA stopped it?

A. What is my belief? Retaliation.

…

Q. What is the reason that you believe we stopped it?

A. Because I'm suing you people.

Plaintiff's Deposition 168:3-15. Specifically, the plaintiff argues that he was receiving unemployment until he decided to file suit. *Id.* at 171:8-172:14. Despite this testimony, the reasons for termination of unemployment benefits are clear. The letter from the Unemployment Insurance Division states that the plaintiff "quit [his] job without good cause." Veytsman Decl. Ex. W. "Quitting your job rather than going through the hearing process is not a compelling

reason to quit.  You did not take action to preserve your job.  Under NYS unemployment insurance law[,] your quit[ting] was without good cause." *Id.*  Thus, the plaintiff does not establish a *prima facie* case.

Assuming, *arguendo*, that the plaintiff met his initial burden regarding his complaint to the Inspector General and had the benefit of a presumption of retaliation, the argument would still fail in the *McDonnell Douglass* analysis.  The plaintiff argues that, as a result of his complaint, he lost access to a room he had previously used regularly while at work.  Plaintiff's Deposition 15:13-20.  He also argues that he was "set up" to be fired because Ramirez knew that, upon plaintiff discovering the room was locked, he would have to talk to a specific clerk to get a key and retrieve his belongings:

> Q. …Are you alleging that [Ramirez] changed the lock so that you would get into an argument with the clerk?
>
> A. Yes
>
> Q. And--
>
> A. That's how he set me up.
>
> Q. And from that – based on that argument, which he knew was going to become volatile, you would be fired?
>
> A. Yes.
>
> Q. That's how he set you up?
>
> A. That's how he set me up.

Plaintiff's Deposition 115:20-116:7.  On this point, the defendants argue that the shop was actually a Sprayer's shop, and Ramirez changed the lock because Ortiz no longer worked with any Sprayers and, therefore, no longer needed access.  Ramirez Decl. ¶¶ 6-7.  Further, the

defendants provided evidence that another reason for changing the lock was to make sure the plaintiff was not loitering in the shop when he was supposed to be elsewhere. *Id.* at ¶¶ 8-9. Through this evidence, the defendants have expressed a legitimate, nondiscriminatory reason for ending the plaintiff's access to the shop. The burden then shifts back to the plaintiff to show that these reasons are pretextual, but the plaintiff never responded to the instant motion. Accordingly, summary judgment is granted to the defendants on plaintiff's retaliation claims.

3. Failure to Promote Claim

When construed liberally, plaintiff's complaint can also be read as suggesting that defendants failed to promote him for discriminatory reasons. A plaintiff bringing a Title VII action for discriminatory failure to promote must show that he: (i) is a member of a protected class; (ii) applied and was qualified for a job for which the employer was seeking applicants; (iii) was rejected for the position; and that (iv) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications. *Estate of Hamilton v. City of New York*, 627 F.3d 50, 55(2d Cir. 2010); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004). While plaintiff's Complaint alleges that he was denied promotional opportunities, Complaint at ¶ 15, plaintiff does not even allege, much less offer any evidence to prove, that he applied for and was rejected from any position at NYCHA. Plaintiff, therefore, fails to establish a discriminatory failure to promote on the part of the defendants.

4. Hostile Work Environment and Constructive Discharge Claims

Plaintiff's Complaint also alleges that NYCHA employees subjected him to a hostile work environment that ultimately became so intolerable as to rise to the level of a constructive

discharge.  A plaintiff has been subjected to a hostile work environment where there is

"misconduct . . . severe or pervasive enough to create an objectively hostile or abusive work

environment" and which "the victim . . . also subjectively perceive[s] . . . to be abusive."

*Feingold*, 366 F.3d at 150 (internal quotation marks omitted).  When considering whether a

plaintiff was subjected to a hostile work environment, courts consider "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

mere offensive utterance; and whether it unreasonably interferes with [the] employee's work

performance.  *Harris v. Forklift Systems*, Inc. 510 U.S. 17, 23 (1993)*, abrogated on other*

*grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 753 (1998).

Plaintiff himself has not pointed to specific evidence supporting his claim that he was

subjected to a hostile work environment and constructively discharged.  The only allegation in

plaintiff's Complaint pertaining to a hostile work environment is his conclusory assertion that

"conditions were intolerable," Complaint at  ¶ 17, and statements reflecting his dissatisfaction

with being assigned to janitorial duties.  Complaint at ¶¶ 6, 7, 9, 11, 16.  However, as defendants

note, there is evidence from plaintiff's deposition that plaintiff heard defendant Ramirez use a

racial epithet on one occasion and, on two other occasions, three individuals (who are not parties

in this action) made racial comments, one of which resulted in the individual receiving a

reprimand from his supervisor and issuing an apology to the plaintiff.  Memorandum at 20.

"For racist comments, slurs, and jokes to constitute a hostile work environment,

. . . instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial

comments."  *Schwap v. Town of Avon,* 118 F.3d 106, 110 (2d Cir. 1997).  The few allegations of

sporadic racial comments contained in plaintiff's deposition do not meet the "severe or

pervasive" standard outlined by the Supreme Court in *Harris*. Accordingly, plaintiff has not made out a case of a hostile work environment.

In order to establish constructive discharge, a plaintiff "must show that the abusive working environment became so intolerable that [his] resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 134 (2004); s*ee also Spence v. Maryland Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993) (quoting *Pena v. Brattleboro Retreat*, 702 F.2d 322, 324 (2d Cir.1983)). This requires a "further showing," beyond what is necessary to establish a hostile work environment. *Suders*, 542 U.S. at 134. There is no constructive discharge where an employee "preferred not to continue working for that employer," or where "the employee's working conditions were difficult or unpleasant." *Spence*, 995 F.2d at 1156.

Plaintiff in this case alleges that work conditions were so "intolerable" that he was "forced to involuntar[ily] resign from his employment." Complaint at ¶ 17. However, defendants specifically cite to those portions of plaintiff's deposition in which he testified that he did not resign from his position as a result of intolerable working conditions, but upon the advice of his attorney. Plaintiff's Deposition 164: 20-25. Defendants also provide evidence that plaintiff thought NYCHA was "not a bad place to work" and that aside from having to work with "knucklehead supervisors [who] don't know what they're doing. . . it's great to work with [NYCHA]." Plaintiff's Deposition 211: 22, 212: 24-213: 1-5. Moreover, as noted at pages 17 - 18, *ante*, there is no evidence that plaintiff was ever subjected to a hostile work environment. Accordingly, plaintiff's claim of constructive discharge is without merit.

III. Plaintiff's Section 1983 Claims

In order to state a cause of action pursuant to 42 U.S.C. § 1983 ("section 1983") a plaintiff must allege both that the conduct complained of was "committed by a person acting under color of state law" and that the conduct "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Moreover, "[i]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under section 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Supreme Court has held that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009). Although there may be instances in which a supervisor can be liable for constitutional violations by a subordinate, *see e.g. Colon v. Coughlin*, 58 F. 3d 865, 873 (2d Cir. 1995), a section 1983 plaintiff cannot base a defendant's liability solely upon *respondeat superior* or on "linkage in the . . . chain of command." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

Plaintiff fails to specify acts which rise to the level of constitutional violations in his claim against defendants Robert McEntee, Carla Warren and Elaine Peters. According to plaintiff, Robert McEntee and Carla Warren are named as defendants in this action because they made false claims about his words and actions resulting in him receiving counseling memoranda. Plaintiff's Deposition 65-66, 70-75. These actions do not amount to constitutional violations. In addition, plaintiff admits that he never had any direct contact with Elaine Peters and only names her as a defendant because he believes that she, as a NYCHA borough manager, should have ensured that his supervisors did not assign him to janitorial duties. Plaintiff's Deposition 63: 12-

64: 15.  This *respondeat superior* claim against Elaine Peters fails as a matter of law.  *See Hernandez*, 341 F.3d at 144.

With respect to defendants Case and Ramirez, plaintiff alleges that these defendants violated his constitutional right to equal protection of the law.  Courts in this Circuit have held that discrimination based on race may be actionable under section 1983 as an equal protection violation in the public employment context.  *Desir v. Board of Co-op. Educational Services (BOCES) Nassau County,* No. 07 Civ.1994 (RRM), 2011 WL 1204631 at *13 (E.D.N.Y. March 29, 2011) (citing *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004)).  Since a section 1983 equal protection claim against individuals parallels a Title VII claim against the State once action under the color of state law is established, courts must employ the *McDonnell Douglas* burden-shifting standard used in Title VII cases in the analysis of a plaintiff's section 1983 equal protection claim against individual defendants.  *Id*.  Courts in this Circuit have held that the elements of a Title VII claim are generally the same as the elements of an equal protection claim and that "the two must stand or fall together."  *Feingold*, 366 F.3d at 159.  As this Court has decided on pages 10-11, *ante*, the plaintiff in this case has failed to meet the elements of a Title VII violation.  Therefore, his equal protection violation claim also fails.

Plaintiff alleges that defendants Sherraine Wingate and Dawn Pinnock violated his constitutional right to procedural due process.  The procedural due process clause of the Fourteenth Amendment prohibits states from depriving an individual of a protected property interest without adequate notice and a meaningful opportunity to be heard.  Property interests that are protected by the Due Process Clause of the Fourteenth Amendment are defined by "existing rules or understandings that stem from an independent source such as state law."  *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).  In this case, plaintiff alleges that his right to

procedural due process was violated when defendant Pinnock suspended plaintiff from his job for thirty days without notice or the opportunity to be heard. Complaint at ¶ 10. Defendants do not contend that plaintiff had no existing property interests, but assert that plaintiff was not denied due process because he had access to a post-deprivation hearing in accordance with New York Civil Service Law §75(3). This section provides that:

> Pending the hearing and determination of charges of incompetency or misconduct, the officer or employee against whom such charges have been preferred may be suspended without pay for a period not exceeding thirty days.

Defendants have adduced evidence that plaintiff was offered the opportunity for the post-depravation hearing authorized by §75(3), and that plaintiff knew that he would have the opportunity to present his case at a hearing following his thirty-day suspension. Plaintiff's Deposition 162-165. Further, if found not guilty of the charges he faced, he would have been reimbursed for the pay he lost during his suspension. New York Civil Service Law §75(3). However, plaintiff resigned from his position at NYCHA before the hearing that would serve as his opportunity to be heard. Plaintiff's Deposition 164: 20 - 165: 9.

Plaintiff also alleges that defendant Sherraine Wingate violated his constitutional right to procedural due process when she docked his pay after he took a medical leave of absence. Complaint at ¶ 14. By plaintiff's own admission, his pay was docked because his leave of absence paperwork was misplaced by other NYCHA employees and his manager forgot to follow up, not because defendant Wingate had any personal involvement in the docking of his pay. Plaintiff's Deposition 154: 17-21, 193: 9-25. Accordingly, even assuming that evidence of a single instance of docking plaintiff's pay is sufficient to make out a procedural due process violation, it would not suffice to make out such a claim against defendant Wingate. See *Wright*, 21 F.3d at 501.

21

**CONCLUSION**

For the reasons stated above, defendants' motion for summary judgment is granted with respect to all federal claims and this Court declines to exercise jurisdiction over plaintiff's state law claims.

**SO ORDERED.**

_____S/_____
SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
      September 30, 2011